# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RUSSELL-MURRAY HOSPICE, INC.,    :
                                     :

        Plaintiff,           :       Civil Action No.:      09-2033 (RMU)
                                       :

        v.                   :       Re Document Nos.:  12, 17, 18, 19
                                       :

KATHLEEN SEBELIUS,             :
in her official capacity as Secretary of the   :
U.S. Department of Health and      :
Human Services,               :
                                       :
        Defendant.        :

## MEMORANDUM OPINION

**GRANTING THE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING THE
DEFENDANT'S MOTION FOR PARTIAL REMAND OR, IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT; GRANTING THE DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
BASED ON A LACK OF SUBJECT MATTER JURISDICTION; DENYING THE DEFENDANT'S
MOTION TO STRIKE EXHIBITS IN THE PLAINTIFF'S "APPENDIX"**

## I. INTRODUCTION

The plaintiff is a hospice care provider participating in Medicare, a federal program

administered by the Department of Health and Human Services ("HHS"). It commenced this

action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*,

challenging HHS's demands for the repayment of funds distributed to the plaintiff in fiscal years

2006 and 2007 purportedly in excess of the lawful cap on such distributions. The plaintiff

contends that the regulation pursuant to which HHS calculated these repayment amounts

conflicts with the governing statute and must be set aside. The plaintiff has moved for summary

judgment on its challenge to the fiscal year 2007 repayment demand, seeking an order declaring

that the regulation is unlawful and enjoining HHS from enforcing it. In response, the defendant

has moved to remand the plaintiff's claims regarding the fiscal year 2007 repayment to the agency for additional fact-finding. In the alternative, the defendant moves for summary judgment as to the plaintiff's 2007 repayment demand. Furthermore, the defendant has moved to dismiss the plaintiff's claims regarding the 2006 repayment demand for lack of subject matter jurisdiction.

For the reasons discussed below, the court grants the plaintiff's motion for summary judgment regarding the 2007 repayment demand and denies the defendant's motion to remand that claim or, in the alternative, for partial summary judgment. The court, however, grants the defendant's motion to dismiss the plaintiff's claims regarding the 2006 repayment demand based on the absence of subject matter jurisdiction.[1]

## II. BACKGROUND

### A. The Statutory and Regulatory Framework

Medicare provides health insurance to the elderly and disabled by entitling eligible beneficiaries to have payment made on their behalf for the care and services rendered by health care providers. *See* 42 U.S.C. §§ 1395 *et seq.* Providers, in turn, are reimbursed by insurance companies, known as "fiscal intermediaries," that have contracted with the Centers for Medicare and Medicaid Services ("CMS") to aid in administering the Medicare program. *See id.* § 1395h. Fiscal intermediaries determine the amount of reimbursement due to providers under the Medicare statute and applicable regulations. *See id.* § 1395kk-1. If the provider disagrees with a fiscal intermediary's determination, it may appeal that determination to the Provider

---

[1]     Finally, the defendant has also filed a motion to strike certain exhibits in the plaintiff's exhibits because they were not part of the administrative record. *See generally* Def.'s Mot. to Strike. As discussed below, the court denies that motion.

Reimbursement Review Board ("PRRB"). *Id.* § 1395oo(a). A decision of the PRRB constitutes a final agency ruling, unless appealed to the CMS Administrator. *Id.* § 1395oo(f)(1).

If the intermediary's action involves a question of law that it lacks the authority to address, the Medicare statute provides that the PRRB may grant expedited judicial review of that question. *See id.* Specifically, the statute states that "[p]roviders shall . . . have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines . . . that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received." *Id.*

Among other services, Medicare covers hospice care for individuals who are "terminally ill,"[2] reimbursing hospices for services such as nursing care, physical and occupational therapy, home health aide services, medical supplies and counseling. *Id.* § 1395x(dd)(1). An individual remains entitled to hospice care benefits so long as he or she is certified as being "terminally ill."[3] *See id.* § 1395d(d)(1) (establishing that reimbursement for hospice care may be provided "during two period of 90 days each and an unlimited number of subsequent period of 60 days each during the individual's lifetime").

The Medicare statute, however, places a cap on the total amount that Medicare may distribute to a hospice provider in a single fiscal year (November 1 through October 31). *See id.*

---

[2]     An individual is "terminally ill" if he or she has "a medical prognosis that the individual's life expectancy is 6 months or less." 42 U.S.C. § 1395x(dd)(3).

[3]     An individual's initial election of hospice care must be accompanied by a certification from the attending physician and the medical director of the hospice program that the individual is "terminally ill" as defined by the statute. *Id.* § 1395f(a)(7)(A)(i). At the expiration of this initial election period, the attending physician or medical director may recertify the individual's eligibility for hospice care benefits for additional sixty- or ninety-day periods. *Id.* § 1395f(a)(7)(A)(ii).

§ 1395f(i)(2)(A).  Payments made to a hospice care provider in excess of the statutory cap are considered overpayments that the hospice care provider must refund to the government.  *Id.*

More specifically, the statute provides that the total yearly payment to a hospice provider may not exceed the product of the annual "cap amount"[4] and the "the number of [M]edicare beneficiaries in the hospice program in that year."  *Id.*  For purposes of this calculation,

> the "number of [M]edicare beneficiaries" in a hospice program in an accounting year is equal to the number of individuals who have made an election under subsection (d) of this section with respect to the hospice program and have been provided hospice care by (or under arrangements made by) the hospice program under this part in the accounting year, *such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year* or under a plan of care established by another hospice program.

*Id.* § 1395f(i)(2)(C) (emphasis added).  Thus, the Medicare statute directs HHS to account for the fact that an individual may receive care in more than one fiscal year by requiring HHS to count that individual as a beneficiary in each year in which he or she receives hospice care benefits, with that number proportionally reduced to reflect care provided in previous or subsequent years.  *See id.*

To implement the statutory cap provision, HHS promulgated a reimbursement regulation governing the calculation of the statutory cap amount.  *See* 42 C.F.R. § 418.309.  In pertinent part, the regulation provides that the "number of beneficiaries" portion of the statutory cap calculation includes

> [t]hose Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care . . . from the hospice during the period beginning on September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period).

---

[4]     The statute defines the "cap amount" as "$6,500, increased or decreased . . . by the same percentage as the percentage increase or decrease, respectively, in the medical care expenditure category of the Consumer Price Index."  42 U.S.C. § 1395f(i)(2)(B).

*Id.* § 418.309(b) (emphasis added).  The regulation does not provide for the proportional allocation of beneficiaries, providing instead that an individual is counted as a beneficiary only in a single year, depending on when he or she first elects to receive hospice benefits.  *See id.*

HHS's justification for the regulation begins with the observation that the average length of a hospice stay is seventy days.  *See* Def.'s Mot. at 7 n.7.  If a patient elects hospice care on or before September 27 of a particular year (thirty-five days before the end of the fiscal year), the hospice care provider will receive 100% of the statutory cap amount attributable to that beneficiary in the current fiscal year because in the average case, the majority of the patient's hospice care will be provided in that fiscal year.  *See* 42 C.F.R. § 418.309(b)(1).  If, on the other hand, the patient elects hospice care after September 27, the hospice care provider will receive 100% of the statutory allowance for that patient in the following fiscal year, because in the average case, the majority of the patient's hospice will be provided in the following year.  Thus, although the regulation does not provide for the proportional allocation of cap amounts, it attempts to approximate the proportional allocation by setting up a system in which beneficiaries are, on average, counted in the year in which they receive the majority of their hospice care.  *See id.*

## B.  The Plaintiff's Claims

The plaintiff is a Medicare-certified hospice care provider operating in El Reno, Oklahoma.  Compl. ¶ 1.  In September 2008, the plaintiff received a demand for repayment of $946,732 for funds distributed to it in fiscal year 2006 purportedly in excess of the statutory cap.  *Id.* ¶ 3.  In April 2009, the plaintiff received a repayment demand of $398,630 for funds distributed to it in fiscal year 2007 purportedly in excess of the statutory cap.  *Id.* ¶ 9.  The

plaintiff appealed both repayment demands to the PRRB in September 2009, challenging the validity of 42 C.F.R. § 418.309(b)(1). *Id.* ¶¶ 7-9.

In an October 2009 ruling, the PRRB denied the plaintiff's appeal of the fiscal year 2006 repayment demand, concluding that the appeal was untimely and that the plaintiff had not demonstrated good cause for its failure to comply with the filing deadline. *Id.* ¶ 11; Pl.'s Mot., Ex. G. In a separate ruling, however, the PRRB granted the plaintiff's request for expedited judicial review of the fiscal year 2007 repayment demand. Compl. ¶ 10; Pl.'s Mot., Ex. H.

The plaintiff subsequently commenced this action challenging the validity of the repayment demands for fiscal years 2006 and 2007 on the grounds that 42 C.F.R. § 418.309(b)(1), the regulation pursuant to which the demands were calculated, conflicts with 42 U.S.C. § 1395f(i)(2), the statutory provision the regulation purports to implement. Compl. ¶¶ 13, 28-37. Had HHS applied a lawful calculation of its cap liability, the plaintiff contends, its cap liability for fiscal years 2006 and 2007 would have been materially reduced. *Id.* ¶ 42. The plaintiff seeks an order declaring the regulation invalid, vacating the 2006 and 2007 repayment demands issued to the plaintiff, enjoining HHS from using the regulation in calculating the hospice cap liability of the plaintiff or any other hospice and directing HHS to compensate the plaintiff for the amounts paid to HHS pursuant to the allegedly unlawful regulation. *Id.* ¶ 14.

In January 2010, the plaintiff filed a motion for summary judgment on its claim that the fiscal year 2007 demand must be set aside because the reimbursement regulation violates the Medicare statute. *See generally* Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot."). The motion does not seek adjudication of the plaintiff's claim regarding the fiscal year 2006 repayment demand, which, according to the plaintiff, "raises certain secondary issues (such as equitable tolling)

which may be more efficiently determined following a ruling on [the plaintiff's] clean legal challenge to the validity of the regulation." *Id.* at 4.

The defendant has moved to dismiss the plaintiff's claim regarding the fiscal year 2006 repayment demand for lack of subject matter jurisdiction, arguing that the plaintiff failed to commence a timely administrative appeal. *See* Def.'s Mot. for Partial Dismissal & for Partial Remand, or in the Alternative, for Partial Summ. J. ("Def.'s Mot.") at 15-21. The defendant has also moved to remand the plaintiff's claim regarding the fiscal year 2007 repayment demand for further administrative proceedings, arguing that the plaintiff failed to obtain necessary factual determinations from the PRRB prior to commencing suit. *Id.* at 21-34. In the alternative, the defendant seeks summary judgment on the plaintiff's challenge to the fiscal year 2007 repayment demand and the validity of the reimbursement regulation. *Id.* at 34-44.

The parties' motions are now ripe for adjudication. The court therefore turns to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Claim Regarding the Fiscal Year 2006 Repayment Demand

The defendant contends that the court lacks jurisdiction to review the plaintiff's claim regarding the fiscal year 2006 repayment demand because the plaintiff failed to commence a timely administrative appeal of that demand. *See* Def.'s Mot. at 15-21. More specifically, the defendant asserts that the plaintiff failed to appeal the fiscal year 2006 repayment demand to the PRRB within 180 days of receiving notice of the demand, as required by the Medicare statute. *Id.* at 17-18. The defendant argues that because the PRRB's dismissal of an appeal on timeliness

grounds is not a final agency decision subject to judicial review, the court lacks jurisdiction to review the plaintiff's claim regarding the fiscal year 2006 repayment demand. *Id.* at 18-20.

The plaintiff concedes that it did not file its appeal within the 180-day deadline set forth in the statute. Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss at 6. The plaintiff maintains, however, that the PRRB's dismissal of the plaintiff's administrative appeal on timeliness grounds, stemming from its determination that no "good cause" existed for granting the plaintiff leave to late file, constituted a final agency decision subject to judicial review.[5] *Id.* at 6-8. The plaintiff further asserts that the PRRB erred in dismissing the plaintiff's administrative appeal on timeliness grounds because principles of equitable tolling excuse the late-filing of the appeal. *Id.* at 9-17.

To obtain judicial review for claims arising under the Medicare statute, a provider must channel its complaints through the administrative review procedures set forth in the statute. *See* 42 U.S.C. § 1395ii (applying 42 U.S.C. § 405(h) to Medicare);[6] *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (observing that the Medicare statute "demands the 'channeling' of virtually all legal attacks through the agency"); *Nat'l Hospice & Palliative Care Org., Inc. v. Weems*, 587 F. Supp. 2d 184, 194 (D.D.C. 2008) (noting that "[t]he Supreme Court has . . . made clear that the process for administrative appeal under Medicare must be followed, where available, even if it is time-consuming and even if the agency cannot grant the

---

[5]     Medicare regulations provide that an untimely appeal submitted to the PRRB "must be dismissed by the Board, except that the Board may extend the time limit upon a good cause showing by the provider." 42 C.F.R. § 405.1836(a).

[6]     "No findings of fact or decision of [HHS] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary of HHS], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter." 42 U.S.C. § 405(h).

relief sought" (citing *Three Lower Counties Cmty. Health Servs., Inc. v. U.S. Dep't of Health & Human Servs.*, 517 F. Supp. 2d 431, 435 (D.D.C. 2007))).

The procedures for obtaining administrative and judicial review of a fiscal intermediary's determination are set forth in 42 U.S.C. § 1395oo. The statute states that a provider dissatisfied with a determination of a fiscal intermediary may pursue an administrative appeal before the PRRB by filing a request for a hearing within 180 days after receiving notice of the determination. 42 U.S.C. § 1395oo(a).[7] It further provides that "[p]roviders shall have the right to obtain judicial review of any *final decision* of the Board . . . within 60 days of the date on which notice of any *final decision* by the Board . . . is received." *Id.* § 1395oo(f)(1) (emphasis added).

This Circuit has stated that "a decision by the PRRB not to hear a case" based on the provider's failure to file a timely appeal "is, by definition, not a 'final decision'" for purposes of 42 U.S.C. § 1395oo. *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 994 n.4 (D.C. Cir. 1982) (citing *John Muir Mem'l Hosp., Inc. v. Califano*, 457 F. Supp. 848, 853 (N.D. Cal. 1978)), *modified on other grounds on reh'g*, 743 F.2d 1 (D.C. Cir. 1984). In *Athens*, a provider who had filed a timely administrative appeal challenging an intermediary's determination sought to amend its appeal to have the PRRB consider additional claims. *Id.* at 992. After the PRRB concluded that it lacked jurisdiction to review the new claims, the plaintiff sought judicial review of that determination. *Id.* The Circuit concluded that the district court had jurisdiction to consider the PRRB's rejection of jurisdiction over the new claim. *Id.* at 994. Yet in reaching that conclusion, the Circuit expressly distinguished those cases in which the provider has failed

---

[7]     The statute further provides that to obtain PRRB review, the amount in controversy must exceed $10,000. 42 U.S.C. § 1395oo(a)(2).

to file a timely administrative appeal,[8] concluding that "*if the threshold requirements of 42 U.S.C. § 1395oo(f)(1) are met*, a court has jurisdiction to review a decision by the PRRB that it lacks jurisdiction to review a determination of the fiscal intermediary." *Id.* at 994 (emphasis added).

As another court in this district recently noted in a thoughtful and thorough discussion of *Athens*,

> [i]n light of *Athens*' express reference to satisfaction of "the threshold requirements of 42 U.S.C. § 1395oo(f)(1)," and its statement in footnote 4 that, with respect to a "provider [who] failed to timely file its appeal . . . a decision by the PRRB not to hear a case on this basis is, by definition, not a 'final decision,'" *Athens* is properly understood as holding that a plaintiff may obtain judicial review of a PRRB refusal to exercise jurisdiction only if an administrative appeal has been filed within the 180-day limitations period.

*Auburn Reg'l Med. Ctr. v. Sebelius*, 686 F. Supp. 2d 55, 64-65 (D.D.C. 2010) (Bates, J.) (holding that because there was no dispute that the plaintiffs' appeals to the PRRB were untimely, "under *Athens*, the Board decision dismissing their appeals as untimely [was] not a 'final decision' within the meaning of § 1395oo (f), and [was] accordingly not subject to judicial review"). Judge Bates's reading of *Athens* is in keeping with the conclusions reached by the majority of courts that have addressed the issue. *See Saline Cmty. Hosp. Ass'n v. Sec'y of Health & Human Servs.*, 744 F.2d 517, 520 n.4 (6th Cir. 1984) (observing that "[u]nder the statute, a P.R.R.B. refusal to hear a case because it was not timely is *not* a 'final decision'"); *Lenox Hill Hosp. v. Shalala*, 131 F. Supp. 2d 136, 141 n.5 (D.D.C. 2000) (noting that a majority of courts that have addressed the issue have concluded that the PRRB's denial of a good cause extension does not

---

[8]     In reaching its holding, the Circuit analyzed *John Muir Memorial Hospital, Inc. v. Califano*, 457 F. Supp. 848 (N.D. Cal. 1978), a district court decision holding that the court lacked jurisdiction to review the PRRB's dismissal of an appeal from an intermediary's decision. *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 993-94 (D.C. Cir. 1982). *John Muir*, the Circuit observed, was "easily distinguished from . . . th[e] case [before the Circuit] because 42 U.S.C. § 1395oo(f)(1) jurisdiction was not available to the court" given that "the provider [had] failed to timely file its appeal." *Id.* at 993-94 & n.4 (citing *John Muir*, 457 F. Supp. at 853).

constitute a "final decision" under 42 U.S.C. § 1395oo); *S. Miami Hosp. v. Bowen*, 658 F. Supp. 544, 546-47 (S.D. Fla. 1987) (concluding that because the plaintiff failed to request a hearing before the PRRB within the 180-day time limit, "no final Board decision issued and this Court lacks jurisdiction to review the claims"); *Miami Gen'l Hosp. v. Bowen*, 652 F. Supp. 812, 814 (S.D. Fla. 1986) (concurring "with the majority of courts which have taken up this question" and concluding that it was "without jurisdiction to consider the plaintiff's appeal of the Board's refusal to exercise its discretion on the plaintiff's behalf, as such an action [was] not a 'final decision' of the Board"); *Arcadia Valley Hosp. v. Bowen*, 641 F. Supp. 190, 192 (E.D. Mo. 1986) (noting that "[w]ithout meeting the 180 day time period of the statute, the Board has no authority to address a provider's claim and cannot issue a judicially reviewable final decision"); *Cambridge Hosp. Ass'n, Inc. v. Bowen*, 629 F. Supp. 612, 615-16 (D. Minn. 1986) (noting that "[v]irtually every court which has considered the question has held that a PRRB decision to dismiss a provider's appeal on timeliness grounds is not a 'final decision' subject to judicial review"); *see also Alacare Home Health Servs., Inc. v. Sullivan*, 891 F.2d 850, 856 (11th Cir. 1990) (concluding that the PRRB's refusal to apply a good cause exemption was not a judicially reviewable final decision because the PRRB lacked the authority to promulgate the "good cause" regulation) (citing *St. Joseph's Hosp. of Kan. City v. Heckler*, 786 F.2d 848, 852-53 (8th Cir. 1986)).[9]

In this case, there is no dispute that the plaintiff failed to file a timely administrative appeal of the fiscal year 2006 repayment demand. *See* Compl. ¶¶ 8-9. It is equally undisputed that this failure resulted in the PRRB's dismissal of the plaintiff's appeal. *See* Pl.'s Mot., Ex. G.

---

[9]    *But see W. Med. Enters. v. Heckler*, 783 F.2d 1376, 1380 (9th Cir. 1986) (concluding that denial of a good cause extension constitutes a reviewable final decision); *IHG Healthcare v. Sebelius*, 2010 WL 2380743, at *5-6 (S.D. Tex. June 13, 2010) (concluding that the court had subject matter jurisdiction to review the PRRB's denial of leave to file a late appeal); *Ozark Mountain Reg'l Rehab. Ctr., Inc. v. Dep't of Health & Human Servs.*, 798 F. Supp. 16, 20 (D.D.C. 1992).

*Athens* compels the conclusion that the PRRB's decision to dismiss the plaintiff's appeal, rather than excuse the plaintiff's untimeliness for "good cause," is not a final decision subject to judicial review.[10]  Accordingly, the court grants the defendant's motion to dismiss the plaintiff's claim concerning the fiscal year 2006 repayment demand.[11]

### B.  The Court Denies the Defendant's Motion to Remand the Plaintiff's Claims Regarding the Fiscal Year 2007 Repayment Demand to the PRRB

The court now turns to the claim concerning the fiscal year 2007 repayment demand. Before considering the merits of this claim, the court addresses the defendant's contention that this claim should be remanded to HHS for a determination regarding the extent to which the plaintiff's 2007 cap liability has been overstated due to the challenged reimbursement regulation. Def.'s Mot. at 21-34.  The defendant asserts that without such a determination, the plaintiff cannot demonstrate that it has been injured by the application of the challenged regulation, as necessary to satisfy the requirements of Article III standing.  *Id.*  Furthermore, the defendant

---

[10]    The plaintiff points out that the notice advising the plaintiff of the dismissal of its appeal as untimely stated that "[r]eview of this determination is available under the provision of 42 U.S.C. § 1395oo(a)."  Pl.'s Mot., Ex. G.  For the reasons discussed, however, this statement is clearly erroneous under *Athens* and is, therefore, without force.  *See* 42 C.F.R. § 405.1867 (stating that the PRRB's authority is constrained by the provisions of the Medicare statute and the regulations issued thereunder)  It should also be noted that although the complaint challenges the validity of the fiscal year 2006 repayment demand, at no point does the complaint indicate that the plaintiff is seeking judicial review of the PRRB's dismissal of the plaintiff's appeal, refusal to apply a "good cause" exemption or failure to equitably toll the plaintiff's filing deadline.  *See generally* Compl.

[11]    The defendant has moved to strike three of the exhibits in the appendix to the plaintiff's motion for summary judgment on the grounds that they were not part of the administrative record.  *See generally* Def.'s Mot. to Strike.  The plaintiff contends, and the defendant does not dispute, that the challenged exhibits address two issues: (i) equitable tolling of the plaintiff's deadline to appeal the 2006 repayment demand and (ii) the plaintiff's standing.  *See* Pl.'s Opp'n to Def.'s Mot. to Strike at 1; *see generally* Def.'s Mot. to Strike; Def.'s Reply in Support of Mot. to Strike. Because the court grants the defendant's motion to dismiss the claim regarding the 2006 repayment demand, the defendant's motion to strike is moot insofar as it seeks to exclude any exhibits concerning the equitable tolling issue.  Furthermore, for reasons discussed in the court's analysis of the plaintiff's standing, *see infra* Part III.B., the defendant's motion to strike those materials addressing the plaintiff's standing is without merit.

argues that without such a determination, there is no basis from which to conclude that the amount in controversy exceeds the $10,000 threshold necessary to trigger the PRRB's jurisdiction. *Id.* at 24-34. Because this factual issue remains unresolved and affects the availability of judicial review, the defendant argues, the court should remand the matter to HHS for further development of the factual record. *Id.* at 21-34.

The plaintiff responds that the fact that it is subject to an unlawful regulation is sufficient to establish its standing to challenge that regulation. Pl.'s Opp'n to Def.'s Mot. & Reply in Support of Pl.'s Mot. ("Pl.'s Reply") at 6-9; Pl.'s Mot. at 11-13. The plaintiff further notes that there is substantial evidence, such as the PRRB's determination that the amount in controversy exceeded the $10,000 threshold, demonstrating that the challenged regulation has resulted in the overstatement of its 2007 cap liability. Pl.'s Reply at 9-10; Pl.'s Mot. at 13. The plaintiff also contends that it would be inappropriate to remand the matter for a determination regarding whether the $10,000 threshold was satisfied, arguing that because the fiscal year 2007 repayment demand was calculated pursuant to an unlawful regulation, the entirety of that demand is in dispute. Pl.'s Reply at 3-5.

### 1. Remand is Not Needed to Establish the Plaintiff's Standing

The court first considers whether remand is necessary to establish the plaintiff's standing. As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing its standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *City of Waukesha v. Envtl. Prot. Agency*, 320 F.3d 228, 233 (D.C. Cir. 2003) (per curiam). The extent of the plaintiff's burden varies according to the procedural posture of the case. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002). At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct will suffice. *Id.* On a motion for summary judgment, however, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 899 (citing FED. R. CIV. P. 56); *accord Fla. Audubon*, 94 F.3d 658, 666 (D.C. Cir. 1996).

To demonstrate standing, a plaintiff must satisfy a three-pronged test. *Sierra Club*, 292 F.3d at 898 (citing *Lujan*, 504 U.S. at 560). First, the plaintiff must have suffered an injury in fact, defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical. *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (citing *Steel Co.*, 523 U.S. at 103). Second, the injury must be fairly traceable to the governmental conduct alleged. *Id.* Finally, it must be likely that the requested relief will redress the alleged injury. *Id.*

The defendant contends that without a determination that the plaintiff's cap liability for 2007 would be reduced under a lawful regulation, the plaintiff cannot establish that it has suffered an injury in fact due to the application of the challenged regulation. This contention is flawed in a number of respects. First, the Supreme Court has stated that plaintiffs are typically presumed to have constitutional standing when they are directly regulated by a challenged governmental action:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. *If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.*

*Lujan*, 504 U.S. at 561-62 (emphasis added); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733-34 (D.C. Cir. 2003) (observing that a party's standing to seek review of administrative action is typically "self-evident" when the party is the object of the action (citing *Sierra Club v.*

*Envtl. Prot. Agency*, 292 F.3d 895, 899-900 (D.C. Cir. 2002))); *cf. Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976) (noting that the purpose of the Article III standing requirement is to ensure that a litigant has a sufficient personal stake in the outcome of the controversy).  In this case, the plaintiff clearly was the object of the governmental action at issue – the challenged regulation and the resulting 2007 repayment demand.  Regardless of the extent to which the challenged regulation ultimately affected the plaintiff's fiscal year 2007 repayment obligation, the fact that the challenged regulation was directly applied to the plaintiff strongly supports the conclusion that it has standing to challenge that regulation.

Furthermore, the defendant's argument presupposes that the plaintiff must establish economic injury to demonstrate injury in fact.  Yet, it is well-established that less tangible forms of injury, such as the deprivation of statutory rights, may be sufficiently particularized and concrete to demonstrate injury in fact.  *See Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619 (D.C. Cir. 2006) (stating that "[a]lthough it is natural to think of an injury in terms of some economic, physical, or psychological damage, a concrete and particular injury for standing purposes can also consist of the violation of an individual right conferred on a person by statute"); *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 243 (D.C. Cir. 1999) (concluding that the plaintiff established injury in fact by showing that he was denied access to information to which he was entitled under federal statute).

In bringing this action before the court, the plaintiff is exercising its express statutory right to seek administrative review of a fiscal intermediary's determination involving a question of law that the PRRB lacks the authority to resolve.  *See* 42 U.S.C. § 1395oo(f)(1).  Accordingly, the court concurs with those courts that have held that apart from any economic harm caused by the application of the challenged regulation, "[t]he use of [42 C.F.R.] § 418.309(b)(1) constitutes

an injury-in-fact because the amounts plaintiff must refund were calculated using a method other than the method specified by Congress." *Lion Health Servs., Inc. v. Sebelius*, 689 F. Supp. 2d 849, 855 (N.D. Tex. 2010) (holding that the plaintiff was not required to prove that its cap repayment would "certainly be less if calculated under lawful regulations" because "[t]he legal right asserted by plaintiff . . . [was] the right to have its cap and cap overpayments calculated according to the method specified by law, not the right to the return of a certain amount of money"); *accord Autumn Light Hospice v. Sebelius*, 2010 WL 988470, at *3 (W.D. Okla. Mar. 12, 2010) (concluding that the plaintiff "satisfie[d] the injury in fact requirement because the demand repayment amount of $250,723.00, based on the allegedly invalid calculations of 42 C.F.R. § 418.309(b), is not conjectural or hypothetical, but rather is the concrete and particularized actual amount Plaintiff is currently repaying to Defendant"); *Tri-County Hospice, Inc. v. Sebelius*, 2010 WL 784836, at *3 (E.D. Okla. Mar. 8, 2010) (concurring "with those district courts which have found the existence of standing apart from any asserted monetary injury"); *L.A. Haven Hospice, Inc. v. Leavitt*, 2009 WL 5868513, at *3-4 (C.D. Cal. Jul. 13, 2009) (concluding that "[t]he injury in fact in this context (if Plaintiff's statutory argument has merit) is the fact that HHS is operating an invalid regulation, leading to accounting and payment inaccuracies"); *Compassionate Care Hospice v. Sebelius*, 2009 WL 2163503, at *2 (W.D. Okla. Jul. 10, 2009) (observing that "the injury is [the] application of the allegedly invalid regulation").

Lastly, the plaintiff has established a substantial probability that the application of the challenged regulation resulted in an increase in the plaintiff's 2007 cap liability. *See Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 899 (D.C. Cir. 2002) (noting that at the summary judgment stage, the plaintiff must demonstrate a "substantial probability" that it has suffered injury in fact); *see also S. Coast Air Quality Mgmt. Dist. v. Envtl. Prot. Agency*, 472 F.3d 882, 895 (D.C.

Cir. 2006) (concluding that the plaintiff had demonstrated a substantial probability of injury because it was "inconceivable that EPA's comprehensive reworking of an Act that specifically controls the requirements for industrial pollution would fail to affect the requirements of even a single NPRA member"), *modified on other grounds*, 489 F.3d 1245 (D.C. cir. 2007). The plaintiff has offered evidence that if HHS had calculated the cap figure using a proportional allocation, as specified in the Medicare statute, rather than applying the methodology set forth in the challenged regulation, the plaintiff's cap liability would have been reduced by over $300,000. *See* Pl.'s Mot., Ex. A ("Myers Decl.") ¶¶ 14-17; Ex. I (spreadsheet documenting the plaintiff's calculation).[12] These calculations are, of course, hypothetical and speculative in nature, as neither the court nor the parties can predict the precise contours of the regulation that will be fashioned to replace the challenged regulation, should it be set aside. Pl.'s Mot. at 15 n.3; Myers Decl. ¶ 15. Nonetheless, given the specificity with which the statute outlines the method for

---

[12]     The defendant argues that because the Myers Declaration and the spreadsheet containing the plaintiff's proportional allocation calculation were not part of the administrative record, the court should not consider them in assessing the plaintiff's standing. *See* Def.'s Mot. at 33-34. Indeed, as previously noted, the defendant has filed a motion to strike these materials because they were not part of the administrative record. *See generally* Def.'s Mot. to Strike. The Circuit, however, has clearly stated that when a party's standing to challenge an administrative action is not "self-evident" from the administrative record, "the petitioner must supplement the record to the extent necessary to explain and substantiate its entitlement to judicial relief." *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 900 (D.C. Cir. 2002); *see also Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 282 F.3d 818, 830 (D.C. Cir. 2002) (noting that parties "are not confined to the administrative record" when demonstrating that agency action resulted in injury in fact), *vacated on other grounds sub nom. Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003). Given that the plaintiff's Article III standing was not a matter before the PRRB, it is appropriate for the plaintiff to supplement the record here for the limited purpose of addressing that issue. *See Sierra Club*, 292 F.3d at 900 (stating that "a petitioner whose standing is not [self-evident] should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding"); *Am. Hospice, Inc. v. Sebelius*, Civ. Action No. 08-1879 (N.D. Ala. Jan. 26, 2010) (Mem. Op.) at 54-55 & n.24 (noting that "it [was] not necessary for the PRRB or HHS to even concern itself with whether a plaintiff can establish Article III standing, even in proceedings before the agency, never mind in a yet-to-be filed court proceeding" and observing that "adherence to the principle that judicial review is limited to the administrative record does not imply that a district court loses its ability to take evidence or make determinations in limited circumstances as relating to jurisdictional facts"). Accordingly, the court denies the defendant's motion to strike these materials insofar as the materials have been submitted to demonstrate the plaintiff's standing.

determining "number of beneficiaries," and the fact that the plaintiff's calculation appears to comply with that methodology,[13] the court is persuaded that the plaintiff has demonstrated a substantial probability that it has suffered economic harm through the application of the challenged regulation. *See, e.g.*, *Hospice of N.M., LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1287-88 (D.N.M. 2010) (concluding that the plaintiff had established injury in fact by submitting a declaration and spreadsheet indicating that HHS had overstated the plaintiff's cap liability).

The remaining elements of standing – traceability and redressability – receive scant attention from the parties and, indeed, merit little discussion here. However one conceives of the injury suffered by the plaintiff, it is fairly traceable to the government conduct challenged – the application of the challenged regulation to assess the plaintiff's cap liability. And even if the court cannot directly award damages to the plaintiff, it can direct HHS to calculate and refund to the plaintiff any amounts overpaid. *See Compassionate Care Hospice*, 2010 WL 2326216, at *5 (invalidating the reimbursement regulation and ordering HHS to calculate and refund any amounts overpaid by the plaintiff hospice); *see also Hospice of N.M., LLC v. Sebelius*, 691 F. Supp. 2d 1275, 1295 (D.N.M. 2010) (concluding that "HHS' application of the allegedly invalid regulation is an integral part of the injury suffered by Plaintiff, and if the Court were to find that the regulation is invalid, this would at least partially redress Plaintiff's injury"); *cf. Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982) (noting that a plaintiff "need not show that a favorable decision will relieve his *every* injury" to establish redressability).

---

[13]    The defendant offers no specific objection to the methodology employed by the plaintiff to calculate its estimated cap overpayment, stating only that the calculation is hypothetical and speculative. *See generally* Def.'s Mot.; Def.'s Reply. Furthermore, the defendant fails to explain why a calculation performed by the PRRB following remand would be any less hypothetical or speculative than the calculation offered by the plaintiff, given the absence of a substitute regulation. *See* Def.'s Mot. at 33.

Thus, the plaintiff has established that it has Article III standing to maintain this action. Accordingly, the court declines to remand this matter for additional administrative fact-finding on the plaintiff's standing.

### 2. Remand is Not Needed to Determine Whether the PRRB Properly Determined that the Amount in Controversy Was Satisfied

In granting the plaintiff's request for expedited judicial review of the 2007 repayment demand, the PRRB determined that "[t]he documentation shows that the estimated amount in controversy exceeds $10,000." Pl.'s Mot., Ex. H. The defendant argues that this determination was based on the plaintiff's erroneous representation that the amount in controversy was the total amount of the 2007 repayment demand ($398,630), rather than the amount by which the plaintiff's cap liability for 2007 would be reduced under a "permissible" calculation. Def.'s Mot. at 27. The defendant contends that the court should therefore remand the matter so that the PRRB may determine whether the amount in controversy truly exceeds the $10,000 threshold by calculating the extent to which the challenged regulation resulted in an overstatement of the plaintiff's cap liability for 2007. *Id.* at 24-28.

The "amount in controversy" requirement set forth § 1395oo(a)(2) "is nothing more than a jurisdictional provision, comparable to the $75,000 amount-in-controversy provision applicable to diversity cases under 28 U.S.C. § 1332." *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 40 n.26 (D.D.C. 2008), *amended on other grounds*, 587 F. Supp. 2d 37 (D.D.C. 2008). The Circuit has made clear, in the comparable context of diversity jurisdiction, that no extensive fact-finding is necessary to determine that the amount in controversy exceeds the jurisdictional threshold. *See Rosenboro v. Kim*, 994 F.2d 13, 16-17 (D.C. Cir. 1993) (stating that dismissal for failure to satisfy the jurisdictional amount is justified only if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed" and that the sum

claimed by the plaintiff controls so long as the claim is made in good faith (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938))). To require the PRRB to gather data and perform a detailed calculation of the specific amount in controversy simply to establish its jurisdiction to hear an appeal would represent a significant departure from the established scope of jurisdictional fact-finding, a departure for which the defendant has offered no authority. *See IHG Healthcare v. Sebelius*, 2010 WL 2380743, at \*8 (S.D. Tex. June 13, 2010) (rejecting the defendant's request for remand and noting that "the court can find no reason, or authority, for requiring the PRRB to undertake more arduous fact-finding in evaluating its jurisdiction than this court does when evaluating its own subject matter jurisdiction").

The PRRB stated that it reviewed the documentation submitted by the plaintiff, which contained the fiscal year 2007 cap calculation performed by the fiscal intermediary, as well as an explanation of the plaintiff's challenge to that calculation. Pl.'s Mot., Exs. F, H. Based on that documentation, the PRRB "estimated" that the amount in controversy exceeded the statutory threshold. Pl.'s Mot., Ex. H. The defendant did not challenge this determination at the administrative level[14] and offers nothing to call it into question now, beyond its unsubstantiated assertion that the PRRB uncritically accepted the totality of the 2007 repayment demand as the amount in controversy, an assertion at odds with the PRRB's statement that the estimated the amount in controversy exceeded $10,000 based on the documentation submitted by the plaintiff. *See* Def.'s Mot. at 26-27; Pl.'s Mot., Ex. H. Accordingly, the defendant has not persuaded the

---

[14]     Indeed, HHS had the authority to review the PRRB's determination that it had jurisdiction over the plaintiff's appeal, but did not exercise that authority. *See* 42 C.F.R. § 405.1875(a) (providing that HHS may review the PRRB's jurisdiction over a specific matter upon the PRRB's granting of expedited judicial review).

court that remand is necessary for additional jurisdictional fact-finding.[15]  *See IHG Healthcare*, 2010 WL 2380743, at *8 (noting that "[t]he bare 'possibility' that the PRRB may have made a mistake is no warrant for this court to reverse [its] decision" that the statutory threshold was satisfied).

## C.  The Court Grants the Plaintiff's Motion for Partial Summary Judgment and Denies the Defendant's Cross-Motion for Summary Judgment

### 1.  The Challenged Regulation Fails the First Prong of the *Chevron* Analysis

The court turns at last to the merits of the plaintiff's claim regarding the 2007 repayment demand.  The plaintiff contends that that repayment demand must be set aside because the regulation on which it was based, 42 C.F.R. § 418.309(b)(1), impermissibly conflicts with 42 U.S.C. § 1395f(i)(C)(2), the statutory provision it purports to implement.  *See* Pl.'s Mot. at 5-9, 16-21.  The plaintiff argues that whereas the Medicare statute requires HHS to allocate the cap amount across years of service by proportionally adjusting the "number of beneficiaries" in any given year to reflect hospice services provided to an individual in previous and subsequent years, the regulation provides that an individual is counted as a beneficiary only in a single year, depending on when he or she first elects hospice benefits.  *Id.*  The plaintiff notes that every court to have addressed the issue has concluded that the regulation is invalid because it conflicts with the statute.  *Id.* at 2; *see generally* Pl.'s Notice of Status of Related Cases.  The defendant maintains that the regulation does not conflict with the statute and that its promulgation and

---

[15]     Furthermore, it bears repeating that the court's role in this matter is limited to resolving a question of law underlying the action of a fiscal intermediary.  *See* 42 U.S.C. § 1395oo(f)(1).  Given the limited scope of the court's inquiry, it would be incongruous for the court to embark on an exploration of the factual underpinnings of the PRRB's jurisdiction.  *See id.*; *Am. Hospice Inc. v. Sebelius*, Civ. Action No. 08-1879 (N.D. Ala. Jan. 26, 2010) (Mem. Op.) at 53 (noting that the court "is *not* being asked to review the decision of the *PRRB*" as the "PRRB made no substantive decision and took no substantive action at all").

application falls within the agency's considerable discretion to administer the Medicare program. Def.'s Mot. at 36-44.

The Supreme Court set forth a two-step approach to determine whether an agency's interpretation of a statute is valid under the APA. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). This approach, commonly referred to as the "*Chevron* analysis," requires the court to first look to "whether Congress has spoken to the precise question at issue." *Id.* at 842. If so, the court ends its inquiry. *Id.* But, if the statute is ambiguous or silent, the second step requires the court to defer to the agency's position, so long as it is reasonable. *Id.* at 843; *Sea-Land Servs., Inc. v. Dep't of Transp.*, 137 F.3d 640, 645 (D.C. Cir. 1998) (holding that "[*Chevron*] deference comes into play of course, only as a consequence of statutory ambiguity, and then only if the reviewing court finds an implicit delegation of authority to the agency").

Like every court to have addressed the issue to date, this court need not advance beyond the first step of the *Chevron* analysis. The Medicare statute plainly states that in determining the "number of beneficiaries," the fiscal intermediary and HHS are required to count every individual who receives care in that fiscal year, with "such number reduced to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year." 42 U.S.C. § 1395f(i)(2)(C). Under the challenged regulation, however, an individual is counted as a beneficiary only in a single year, depending on when he or she elects hospice benefits, regardless of whether he or she receives hospice care in multiple years. *See* 42 C.F.R. § 418.309(b)(1) (providing that the number of beneficiaries shall include "[t]hose Medicare beneficiaries who have not previously been included in the calculation of any hospice cap and who have filed an election to receive hospice care . . . during the period beginning on

September 28 (35 days before the beginning of the cap period) and ending on September 27 (35 days before the end of the cap period")).  The regulation is at odds with the plain language of the statute in that it omits and replaces the proportional allocation calculation expressly called for in the statute.  *Compare* 42 U.S.C. § 1395f(i)(2)(C) *with* 42 C.F.R. § 418.309(b)(1).

Indeed, at the time HHS proposed the challenged regulation, it acknowledged that it was not implementing the statute's proportional allocation provision:

> The statute specifies that the number of Medicare patients used in the calculation is to be adjusted to reflect the portion of care provided in a previous or subsequent reporting year or in another hospice.  With respect to the adjustment necessary to account for situations in which a beneficiary's election overlaps two accounting periods, we are proposing to count each beneficiary only in the reporting year in which the preponderance of the hospice care would be expected to be furnished *rather than attempting to perform a proportional adjustment*.  Although [42 U.S.C. § 1395f(i)(2)(C)] specifies that the cap amount is to be adjusted "to reflect the proportion of hospice care that each such individual was provided in a previous or subsequent accounting year . . .", such an adjustment would be difficult in that the proportion of the hospice stay occurring in any given year would not be known until the patient died or exhausted his or her hospice benefits.  We believe that the proposed *alternative* of counting the beneficiary in the reporting period where the beneficiary used most of the days of covered hospice care will achieve the intent of the statute without being burdensome.

48 Fed. Reg. 38146, 38158 (Aug. 22, 1983) (emphasis added).  Thus, the regulation sought to effectuate the intent of the statute by applying an "alternative" methodology to the one specified in the statute.  *See id.*

The defendant maintains that its alternative methodology results from a reasonable interpretation of ambiguities in the statute and that the regulation accomplishes the legislative intent underlying the proportional allocation provision.  *See* Def.'s Mot. at 37-42; Def.'s Reply at 1420.  Yet, as every court to have addressed these issues has concluded, the plain and unambiguous language of the statute clearly establishes a methodology for determining the "number of beneficiaries," one that is fundamentally different from the methodology set forth in

42 C.F.R. § 418.309(b)(1).[16]  *See, e.g.*, *Hospice of N.M.*, 691 F. Supp. 2d at 1292 (holding that

"Congress' intent when it drafted 42 U.S.C. § 1395f(i)(2)(C) was clear and unambiguous, and 42

C.F.R. § 418.309(b)(1) does not comport with that intent"); *Lion Health Servs.*, 689 F. Supp. 2d

at 856-57 (holding the regulation invalid because "Congress was clear in § 1395f(i)(2)(C) about

how the 'number of beneficiaries' should be calculated"); *Compassionate Care Hospice*, 2010

WL 2326216, at *4 (concluding that "[c]ontrary to th[e] [statute's] clear language, the regulation

makes no attempt to determine an appropriate proportion of the amount of care provided in each

fiscal year; rather, it simply assigns the entire amount of a beneficiary's allocation to a single

year based solely on the date of admission"); *L.A. Haven Hospice, Inc.*, 2009 WL 5868513, at *5

(concluding that the regulation fails under the first step of the *Chevron* analysis because

"Congress unquestionably required that the number of medicare beneficiaries be reduced to

reflect 'the proportion' (not simply *a* proportion or *an* estimate, as Defendant would apparently

have 'reflect' mean in this context) of hospice care that 'each such individual' (not individuals in

---

[16]     Although the defendant largely replicates arguments raised (and rejected) in other cases, it does cite decisions from this jurisdiction that, it argues, stand for the proposition that statutory terms such as "reflect" and "proportion" are ambiguous terms that confer a certain amount of discretion to the agency.  *See* Def.'s Mot. at 39-40; Def.'s Reply at 16-17.  These cases concerned statutes that directed the agency to perform a proportional adjustment but did not specify the means for accomplishing that adjustment.  *See Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229-30 (D.C. Cir. 1994) (noting that a statutory provision requiring the Secretary of Labor to "adjust the proportion" of hospital costs attributable to labor costs when calculating certain payment rates did not specify whether the Secretary was required to retroactively apply corrections to erroneous wage data); *Cape Cod Hosp. v. Sebelius*, 677 F. Supp. 2d 18, 30 (D.D.C. 2009) (observing that a statute requiring the agency to "adjust the area wage index . . . in a manner which assures that the aggregate payments . . . are not greater or less than those which would have been made in the year if this section did not apply" did not "specifically direct the [agency] how to accomplish this task").  Thus, these courts concluded that the agency's efforts to implement that proportional adjustment did not fail under the first prong of *Chevron* because Congress had not spoken to the precise issue.  *See Methodist Hosp.*, 38 F.3d at 1229-30; *Cape Cod Hosp.*, 677 F. Supp. 2d at 30.  In this case, by contrast, the challenged regulation does not clarify an ambiguity in the statute by offering a methodology for performing the proportional adjustment required by the statute; it simply relieves the agency of the obligation of performing the adjustment altogether and sets forth an alternative, less burdensome methodology designed to approximate that statutory adjustment.  *See* 42 C.F.R. § 418.309(b)(1).  Accordingly, the decisions cited by the defendant are inapposite.

the aggregate) 'was provided in a previous or subsequent accounting year'"); *see also Tri-County Hospice, Inc.*, 2010 WL 784836, at *3 (noting that the question of the regulation's invalidity was "well-trod ground"); *IHG Healthcare*, 2010 WL 2380743, at *11 (observing that "[t]o date, every district court that has addressed the issue has found the regulation facially invalid").

Accordingly, the court concludes that 42 C.F.R. § 418.309(b)(1) fails the first prong of the *Chevron* analysis and constitutes an abuse of agency discretion. The court, therefore, grants the plaintiff's motion for partial summary judgment and denies the defendant's cross-motion for partial summary judgment.

## 2. The Relief Requested

The plaintiff requests the following relief: a declaration that 42 C.F.R. § 418.309(b)(1) is unlawful and set aside; a declaration that the repayment demand issued to the plaintiff for fiscal year 2007 is unlawful and set aside; an order requiring HHS to return to the plaintiff, with interest and within one year, all monies the plaintiff has paid towards the fiscal year 2007 demand or credit such payments, with interest, to a new cap repayment demand for fiscal year 2007; and an order enjoining HHS from prospective use of 42 C.F.R. § 418.309(b)(1) to calculate the hospice cap liability of the plaintiff or any other hospice provider.[17] Pl.'s Mot., Proposed Order; Pl.'s Reply at 18.

The APA plainly authorizes the court to grant the declaratory relief sought by the plaintiff. *See* 5 U.S.C. § 706(2) (providing that a reviewing court shall hold unlawful and set aside agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law). Accordingly, the court declares that 42

---

[17] The plaintiff does not address its request for costs and attorney's fees, *see* Compl. at 18, in its motion papers. *See generally* Pl.'s Mot.; Pl.'s Reply. The court, therefore, declines to grant such relief, but grants the plaintiff leave to make a supplemental application for such relief. *See Lion Health Servs. v. Sebelius*, 689 F. Supp. 2d 849, 858 (N.D. Tex. 2010).

C.F.R. § 418.309(b)(1) and the fiscal year 2007 repayment demand issued to the plaintiff are unlawful and hereby set aside.

The APA also authorizes the court to enjoin unlawful agency action and direct the agency to remedy harm resulting from such action. *See* 5 U.S.C. § 702 (waiving the government's sovereign immunity to suits by individuals suffering a legal wrong because of agency action and "seeking relief other than money damages"); *Hospice of N.M.*, 691 F. Supp. 2d at 1295 (enjoining the application of the challenged regulation against the plaintiff and remanding the matter to the agency for a calculation of any amounts to be refunded to the plaintiff); *accord Lion Health Servs.*, 689 F. Supp. 2d at 858; *Compassionate Care Hospice*, 2010 WL 2326216, at *5. The Supreme Court has, however, cautioned that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also State of Neb. Dep't of Health & Human Servs. v. Dep't of Health & Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (noting that injunctive relief "must be narrowly tailored to remedy the specific harm shown" (quoting *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108-09 (D.C. Cir. 1976))); *Meinhold v. U.S. Dep't of Defense*, 34 F.3d 1469, 1480 (9th Cir. 1994) (concluding that the district court erred in enjoining the defendant from applying the invalid regulation to all military personnel (citing *Califano*, 442 U.S. at 702)). Accordingly, the court prospectively enjoins HHS from applying the challenged regulation to the plaintiff and remands this case to the HHS for a recalculation of the plaintiff's cap liability for fiscal year 2007. The court, however, declines the plaintiff's request for a nationwide injunction of the challenged regulation.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for partial summary judgment, denies the defendant's motion for partial remand or, in the alternative, cross-motion for summary judgment, grants the defendant's motion for partial dismissal and denies the defendant's motion to strike.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of July, 2010.


RICARDO M. URBINA
United States District Judge